THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GONZALO ALMODÓVAR, Defendant and Appellant.

No. 13584. Argued February 15, 1950.—Decided March 17, 1950.

20

Celestino Iriarte, F. Fernández Cuyar, and H. González Blanes, for appellant. Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court, and Fernando Fornaris, Jr., Assistant Fiscal, for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The information in this case reads as follows:

"The aforesaid defendant, GONZALO ALMODÓVAR, on or about June 30, 1948, and in Sabana Grande, P. R., which forms part of the judicial district of Mayagüez, P. R., and at the time when his Pontiac automobile, license No. 9689, Motor No. 6–957270 was searched under a search warrant issued by the Honorable Justice of the Peace of Sabana Grande, Puerto Rico, acting in common with Santos Ramírez, Rubén Rodríguez, and Juan Figueroa had in his possession, owned, and transported in the aforesaid motor vehicle lists of numbers and letters which are used and can be used in, and are connected with, the illegal games of 'Bolita,' 'Boli-Pool,' combinations connected with the pools and bancas of the race tracks of Puerto Rico and clandestine lotteries."

After a trial the lower court found the defendant guilty and sentenced him to serve two years in jail. Feeling aggrieved by the judgment, he appealed and maintains herein, 1st, that his conviction is void inasmuch as § 4 of Act No.

220 of 1948, for the violation of which he was sentenced, is unconstitutional since it does not define with adequate definiteness and clarity the offense therein attempted to be established, and 2d, that the judgment is erroneous because the evidence admitted is not sufficient to justify a conviction.

██ Despite the extensive and skillful arguments made by the attorney for the appellant in his brief with respect to the first error assigned in regard to the unconstitutionality of § 4 of Act No. 220 of 1948, we are not bound to decide now said question,[1] for we have reached the conclusion that the second error was committed and that the evidence presented is insufficient to support appellant's conviction.

The present case was submitted to the lower court, by stipulation of the parties, on the same evidence for the prosecution presented in the case, already heard and decided by the lower court, of *People* v. *Santos Ramírez, Rubén Rodríguez, and Juan Figueroa* for violation of Act No. 220 of 1948,[2] as well as on the testimony of witness Quintín Hernández, Justice of the Peace of Sabana Grande. The defendant filed a motion for nonsuit and upon the same being denied he did not present any evidence in his defense.

The evidence for the prosecution in *People* v. *Ramírez et al.*, *supra*, consisted, besides the *bolita* material seized, in the testimony of the insular policeman Ismael Cherena, which we summarized in the *per curiam* opinion in that case as follows:

"As disclosed by the testimony given by policeman Cherena, he had been watching for sometime the three defendants for he had information that they were engaged in the *bolita* game. The day of the search of Almodóvar's automobile, Cherena had gone up to Yauco watching the steps taken by the defendants and saw when the car in which the three were riding and which was driven by Rubén Rodríguez stopped in front of the house of Pablo Portalatín, Santos Ramírez getting off and picking up a

[1] We are today deciding it in *People* v. *Mantilla*, p. 35.

[2] Said case was affirmed by this Court by a *per curiam* opinion on November 9, 1949.

yellow and white package, tossing it into the automobile. Meanwhile the other defendant, Juan Figueroa, was waiting with the door open so that Santos Ramírez could get in. The appellants left immediately and the witness lost sight of them. The latter boarded a public car which passed by and telling the chauffeur that he was in a hurry because he had a sick child, he went towards Sabana Grande. Once there he went to police headquarters where he was given a search warrant in order to search the aforesaid automobile. When he had the warrant with him, the witness, together with three other policemen went to the place where he expected the automobile in which the defendants were driving to arrive. As they reached the place the defendants arrived and after a short argument the policemen began to search the automobile, finding under the driver's seat the yellow package which contained lists of *bolita*. They also found other lists and a pencil in the glove compartment. These lists were duly identified by the witness (who seems to have sufficient knowledge of how this game is operated), as being used in the game of *bolita* explaining that the lists were yellow and white, containing numbers of three, four, and five figures with the word 'remainder' written in one of them, saying that that word indicated the numbers which were left. The word 'return' appears also in a few others, indicating the numbers which have been returned and a few other details, all of them tending to show that those were lists of *bolita*."

We should amplify said summary as to another detail testified by policeman Cherena to the effect that when the policeman proceeded to search the automobile of appellant herein the latter told them that they could not do so because the car was his but that when Chief Cordero arrived, he made no objection and the automobile was searched.

As to the witness Hernández, he testified that he was Justice of the Peace of Sabana Grande and that on the day of the search of appellant's automobile the latter sent him a bond in his favor for the offense of *bolipool* and that later on, that same day, he asked the witness to destroy it because he was not involved in that matter and that he destroyed it.

The Assistant *Fiscal* of this Court admits in his brief that the only presumptive evidence which may serve to connect the

appellant with the crime charged is, 1st, that the auto-mobile used by Ramírez, Rodríguez, and Figueroa to transport the *bolita* materials, belonged to the appellant; 2d, that the latter at first objected to having his automobile searched; and 3d, the sending of the bond to the Justice of the Peace without having been arrested or accused. He maintains, however, that ". . . from all the circumstances surrounding the case, *it could perhaps be validly inferred* that Almodóvar sent Santos Ramírez, Rubén Rodríguez, and Juan Figueroa, to Yauco in his private automobile to pick up the lists of *bolita* which were seized in said vehicle." (Italics ours.)

It is a firmly-established rule in criminal cases that in order to convict a defendant exclusively on circumstantial or presumptive evidence it is necessary not only that all the proved circumstances concur in order to show that he committed the offense charged, but that they be inconsistent with any other reasonable conclusion. That is, said evidence must be not only compatible with the defendant's guilt but incompatible with any other rational hypothesis of innocence. *The People* v. *Nevárez*, 10 P.R.R. 91; *People* v. *Quintana*, 44 P.R.R. 37; *People* v. *Sánchez*, 55 P.R.R. 342; *People* v. *Arteaga*, 70 P.R.R. 635.

The account given by policeman Cherena directly connected Ramírez, Rodríguez, and Figueroa with the violation of the *Bolita* Act, for which they were accused and convicted. However, the testimony of said policeman did not connect appellant in any way with the acts performed by the three persons referred to. That Almodóvar was the owner of the automobile, that therefore he objected offhand to the search thereof, and finally that he sent to the Justice of the Peace a prepared bond in case he was accused, and subsequently told him to destroy it, are circumstances which possibly are compatible with his guilt but at the same time they are compatible with the rational hypothesis of his innocence, since his automobile could have been used without his knowledge

and consent, or even if with his consent, but not for illegal purposes. The natural reaction of a person who has not committed an offense and who is not shown a search warrant, is to object to have his automobile searched. Now, is the fact that when the search warrant was shown to the appellant he objected to the search but gave up his attitude as soon as the Chief of Police arrived, sufficient to constitute an inference of guilt incompatible with his innocence? We do not think so. Finally, the only element of proof which might tend to indicate an attitude not free from suspicion is the fact that appellant had prepared a bond prior to being arrested or accused of any crime. But this is also evidence not incompatible with his innocence since he is entitled by law to furnish bond prior to conviction. Appellant could have reasonably believed that in view of what happened in connection with his automobile he could be arrested and he wanted to have the bond ready beforehand.

None of the three aforesaid elements of circumstantial evidence are sufficient, in our judgment, to support the allegations of the information to the effect that appellant "acting in common with Santos Ramírez, Rubén Rodríguez, and Juan Figueroa, had in his possession, owned and transported" the *bolita* material which was seized, and, hence, the judgment appealed from will be reversed and the appellant acquitted.

Mr. Justice Negrón Fernández did not participate herein.